658 S.E.2d 110

**Fr. Timothy J. WATTERS, Appellant,**

v.

**TERMINIX SERVICE, INC., and John Furlow, Respondents.**

**No. 4347.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2008.

Decided Feb. 25, 2008.

---

Gregg E. Meyers, of Charleston, for Appellant.

Clinch H. Belser, Jr. and H. Freeman Belser, both of Columbia; Eugene P. Corrigan, III and Michael J. Ferri, both of Charleston, for Respondents.

## KITTREDGE, J.

This case arises from the sale of a moisture-damaged home from John Furlow to Timothy J. Watters in April of 1997. Terminix Service, Inc. provided at closing what is customarily referred to as a "termite letter." In December of 2002, Watters filed an action against Furlow and Terminix claiming defendants failed to disclose the moisture damage. The trial court granted summary judgment to Furlow and Terminix based on the statute of limitations. We affirm.[1]

### I.

Watters purchased a home from Furlow in April 1997. As part of the purchase process, Terminix completed a CL–100 Report, also known as a termite letter, and it was presented to Watters at closing. Terminix noted there was evidence of inactive wood destroying fungi, an acceptable moisture level, and previous treatment of the property for termite control. Terminix also suggested a qualified building inspector evaluate the structural integrity of the house. Watters hired American Inspection Service, Inc. to conduct a home inspection, and subsequently he purchased the home.

After the closing, Watters made numerous repairs to the home. Following another inspection, Watters' attorney wrote Terminix a letter on May 15, 1997, indicating an examination of the house disclosed damage not reported at the closing.

In August 1998, Watters hired Russell A. Rosen to evaluate the moisture level. Rosen's inspection revealed the sub-floor plywood was delaminated and a moisture problem existed in the crawl space. Rosen opined that the source of the sub-floor damage was related to installation and ductwork alterations performed by Smoak's Air Conditioning. Watters pursued a claim against Smoak's, which resulted in Smoak's paying a settlement of $72,000.

On December 30, 2002, Watters brought the current lawsuit for fraud, negligent misrepresentation, and indemnification alleging Furlow and Terminix failed to disclose the moisture damage. The trial court determined that Watters filed this

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

action outside the statute of limitations and granted summary judgment to Furlow and Terminix.

## II.

A cause of action for damage to real property must be brought within three years of when the damage occurred. S.C.Code Ann. § 15–3–530(3) (2005). An exception lies in the discovery rule, which tolls the starting of the statute of limitations until a person discovers or should have known through reasonable diligence that a potential claim might exist. S.C.Code. Ann. § 15–3–535 (2005); *Barr v. City of Rock Hill*, 330 S.C. 640, 644–45, 500 S.E.2d 157, 160 (Ct.App. 1998).

For purposes of commencement of the statute of limitations, Watters likely received notice of a potential cause of action at closing when he received the Terminix report together with the suggestion by Terminix for an evaluation of the home's structural integrity by a qualified building inspector. Under the summary judgment standard, we give Watters every benefit of the doubt. *See* Rule 56(c), SCRCP (limiting the issuance of summary judgment to cases where "there is no genuine issue as to any material fact"); *Koester v. Carolina Rental Center, Inc.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994) ("In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party.").

 Even measured against the exacting summary judgment standard, it seems an insurmountable hurdle for Watters to delay the start of the statute of limitations after his attorney's May 15, 1997 letter to Terminix referencing the moisture damage. At that time, when viewed objectively, one would reasonably conclude that a claim might exist. Nevertheless, under no circumstances could Watters claim he lacked knowledge of his potential cause of action after August 1998 when he received the report of *his* expert.

 In August 1998, Watters's expert, Rosen, referenced the damage in a report to Watters. The fact that the expert Rosen identified the wrong source did not further delay the

commencement of the statute of limitations as a matter of law. *See Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (Under the discovery rule, the statute of limitations "runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."). Watters's assertion of an estoppel theory to further delay the start of the statute of limitations is unavailing, for the August 1998 report of Watters's expert clearly establishes that the delay in filing the action could not properly be attributed to any alleged misconduct by Terminix or Furlow. *See Wiggins v. Edwards*, 314 S.C. 126, 130, 442 S.E.2d 169, 171 (1994) (stating a defendant may be estopped from claiming the statute of limitations as a defense if the defendant's conduct induced the delay).

### III.

We affirm the grant of summary judgment, for the statute of limitations commenced no later than August 1998 and, therefore, bars Watters's claims brought in December 2002.

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.