687 S.E.2d 29

**Floree HOOPER, as Personal Representative of the Estate of Albert L. Clinton, Deceased, Petitioner,**

v.

**EBENEZER SENIOR SERVICES AND REHABILITATION CENTER, Respondent.**

No. 26748.

Supreme Court of South Carolina.

Heard Sept. 17, 2009.

Decided Dec. 14, 2009.

---

John S. Nichols, of Bluestein, Nichols, Thompson & Delgado, of Columbia, and Robert V. Phillips, of McGowan, Hood, Felder & Johnson, of Rock Hill, for Petitioner.

R. Gerald Chambers and R. Hawthorne Barrett, both of Turner, Padget, Graham & Laney, of Columbia, for Respondent.

Justice BEATTY.

Floree Hooper ("Hooper"), acting as Personal Representative of the Estate of Albert L. Clinton, brought this action alleging claims for wrongful death and survival against Ebenezer Senior Services and Rehabilitation Center ("Ebenezer"). The trial court granted summary judgment in favor of Ebenezer, finding the claims were untimely asserted. The South Carolina Court of Appeals affirmed. *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 377 S.C. 217, 659 S.E.2d 213

(Ct.App.2008). This Court granted Hooper's petition for a writ of certiorari. We now reverse and remand.

## I. FACTS

The facts, in the light most favorable to Hooper, are as follows.[1] Ebenezer was a nursing home located in York County. In February 2003, Albert L. Clinton was placed at Ebenezer by his family. When he was admitted, Clinton had been diagnosed with short- and long-term memory deficits and impaired decision-making ability. Ebenezer was on notice that Clinton was at risk for the development of decubitus ulcers[2] and that he had to be given proper nutrition and be repositioned every two hours to avoid this condition.

Within three weeks of his admission to Ebenezer, Clinton developed severe decubitus ulcers. In April 2003, Clinton was admitted to Piedmont Medical Center in Rock Hill, South Carolina, where he was diagnosed with dehydration, hypernatremia[3], and severe decubitus ulcers. As a result of the allegedly negligent treatment at Ebenezer, Clinton was transferred to another long-term care facility in May 2003. Clinton died on May 15, 2003.

On February 6, 2006, Hooper filed with the York County Court of Common Pleas a summons and complaint in which she alleged substandard care and treatment rendered by Ebenezer contributed to Clinton's death. She asserted claims for wrongful death and survival. It is undisputed by the parties that the statute of limitations on these claims began to run upon Clinton's death on May 15, 2003 and expired three years later on May 15, 2006. *See, e.g.,* S.C.Code Ann. § 15–3–530 (2005) (providing a three-year statute of limitations period for the claims enumerated therein).

---

**1.** On a motion for summary judgment, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Bovain v. Canal Ins.,* 383 S.C. 100, 678 S.E.2d 422 (2009).

**2.** Commonly referred to as bed sores. *Webster's Third New International Dictionary* 588 (2002).

**3.** An excessive amount of sodium in the blood. *Dorland's Illustrated Medical Dictionary* 741 (25th ed. 1974).

According to an affidavit prepared by Hooper's attorney and supporting documents, in order to effectuate service Hooper's attorney called the number for Ebenezer and was told that the business had been sold and it was now "Agape Rehabilitation." Hooper's attorney drove by the building where Ebenezer had been located and saw a sign identifying the premises as "Agape Rehabilitation of Rock Hill."

The attorney searched the website for the South Carolina Secretary of State and found Ebenezer was listed as a business in good standing with a registered agent (Jack G. Hendrix, Jr.) located at 1415 Richland Street, Columbia, South Carolina. On February 8, 2006, the attorney forwarded the pleadings to the Richland County Sheriff's Office for service upon the agent at the designated Columbia address. At the end of February or the beginning of March, the attorney received an Affidavit of Non–Service from the Richland County Sheriff's Office stating service was not successful because the agent had moved to an unknown address.

The attorney then hired a private investigator, who found a personal address for the agent. On March 21, 2006, the attorney mailed the pleadings to the Richland County Sheriff's Office for a second attempt at service upon the agent. On April 10, 2006, the Richland County Sheriff's Office returned the pleadings and advised the attorney that the address was in Lexington County and therefore was not within its jurisdiction.

Immediately thereafter on April 13, 2006, approximately one month before the three-year statute of limitations was due to expire, the attorney forwarded the pleadings to the Lexington County Sheriff's Office for service upon the registered agent. The attorney made numerous follow-up calls to the Lexington County Sheriff's Office to determine the status of service and each time was told that the agent was being served and that he would be notified when service was complete. On June 12, 2006, after the statute of limitations had run, the attorney received an Affidavit of Non–Service from the Lexington County Sheriff's Office informing him that they had, in fact, been unable to effect service on the agent because "per [a] neighbor [the] agt [agent] left his wife a year ago [and it is] unknown where he lives now."

According to the attorney, he then hired a private investigator to try to serve Agape Rehabilitation. An Affidavit of Service and supporting documents indicate service was accomplished on June 15, 2006 by a process server upon Janet Inkelaar, who indicated that she was the Administrator of Agape Rehabilitation and that she was authorized to accept service on behalf of Ebenezer. Inkelaar stated Ebenezer had been taken over by Agape Rehabilitation of Rock Hill in December 2004, but the two businesses were "affiliated."

Ebenezer moved to dismiss Hooper's action on the basis service was not completed before the running of the three-year statute of limitations of section 15–3–530, nor within the time limits of Rule 3(a)(2) of the South Carolina Rules of Civil Procedure (SCRCP), which requires that service be made within the statute of limitations or, if made thereafter, that it be made within 120 days of filing the summons and complaint. Ebenezer alleged Hooper's decedent died on May 15, 2003; therefore, the three-year statute of limitations expired on May 15, 2006. In this case, the summons and complaint were filed on February 6, 2006[4] and service was not effected until June 15, 2006, which was after the running of the statute of limitations and more than 120 days after filing of the summons and complaint.

The parties submitted affidavits and other materials, so the trial court converted the motion into one for summary judgment.[5] The trial court granted summary judgment to Ebenezer, finding Hooper's action was not timely commenced because service did not occur within the statute of limitations or within 120 days of filing the summons and complaint as required by Rule 3(a)(2), SCRCP.

The trial court rejected Hooper's argument that the 120–day period should not begin running until the last day of the

---

4. Ebenezer states in its materials that filing of the summons and complaint occurred on February 8, 2006, but this appears to be a scrivener's error.

5. *See, e.g., Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999) (allowing a motion to dismiss to be treated as a motion for summary judgment where the trial court considers materials outside the pleadings and the parties have a reasonable opportunity to respond to the materials).

statute of limitations, finding this conflicts with the clear and unambiguous wording of Rule 3(a)(2). The trial court also rejected Hooper's arguments that the statute of limitations should be equitably tolled or that Ebenezer should be equitably estopped from asserting the statute of limitations based on its failure to accurately list its registered agent for service of process with the Secretary of State as required by state law.

The Court of Appeals affirmed. *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 377 S.C. 217, 659 S.E.2d 213 (Ct.App. 2008). We granted Hooper's petition for a writ of certiorari to review the decision of the Court of Appeals.

## II. LAW/ANALYSIS

### A. Standard of Review

Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

"In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378–79, 534 S.E.2d 688, 692 (2000). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP. *Id.* at 379, 534 S.E.2d at 692.

### B. Equitable Tolling

On appeal, we first consider Hooper's argument that the statute of limitations should be equitably tolled for the delay in service that occurred while Hooper was trying to serve Ebenezer's nonexistent agent. Hooper asserts she was entitled to rely upon the public records and Ebenezer's failure to name a viable registered agent with the South Carolina Secretary of State as required by state law thwarted her repeated attempts to effect service. Hooper asserts that, under all the

circumstances, it would be inequitable for Ebenezer to be allowed to benefit from its conduct by obtaining a complete dismissal of her claims. We agree.

" 'Tolling' refers to suspending or stopping the running of a statute of limitations; it is analogous to a clock stopping, then restarting." 51 Am. Jur. 2d *Limitation of Actions* § 169 (2000). "Tolling may either temporarily suspend the running of the limitations period or delay the start of the limitations period." *Id.*

South Carolina law provides for tolling of the applicable limitations period by statute in certain circumstances. *See* S.C.Code Ann. § 15–3–30 (2005) (stating exceptions to the running of the statute of limitations when the defendant is out of the state); *id.* § 15–3–40 (providing exceptions for persons under a disability, including being underage or insane).

■ In addition to these statutory tolling mechanisms, however, "[i]n order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable tolling may be applied to toll the running of the statute of limitations." 54 C.J.S. *Limitations of Actions* § 115 (2005). "Equitable tolling is a nonstatutory tolling theory which suspends a limitations period." *Ocana v. Am. Furniture Co.*, 135 N.M. 539, 91 P.3d 58, 66 (2004).

■ Equitable tolling is judicially created; it stems from the judiciary?s inherent power to formulate rules of procedure where justice demands it. *Rodriguez v. Superior Court*, 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728 (2009). "Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period 'to ensure fundamental practicality and fairness.' " *Id.* at 736 (citation omitted).

■ The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use. *Ocana*, 91 P.3d at 65; *see also* 54 C.J.S. *Limitations of Actions* § 115 ("The party who seeks to invoke equitable tolling bears the devoir of persuasion and must, therefore, establish a compelling basis for awarding such relief.").

It has been observed that "[e]quitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." *Ocana*, 91 P.3d at 66. However, jurisdictions have considered tolling in a variety of contexts and have developed differing parameters for its application.[6] *See, e.g., Irby v. Fairbanks Gold Mining, Inc.*, 203 P.3d 1138, 1143 (Alaska 2009) ("Under the doctrine of equitable tolling, when a party has more than one legal remedy available, the statute of limitations is tolled while the party pursues one of the possible remedies."); *Abbott v. State*, 979 P.2d 994, 998 (Alaska 1999) ("Federal precedent equitably tolls the limitations period in three circumstances: (1) where the plaintiff has actively pursued his or her judicial remedies by filing a timely but defective pleading; (2) where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim; or (3) where the plaintiff, by exercising reasonable diligence, could not have discovered essential information bearing on his or her claim." (footnotes omitted)); *Kaplan v. Morgan Stanley & Co.*, 2009 Vt. 78, ——, 987 A.2d 258, —— (2009) (2009 WL 2401952) ("Equitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum.") (citing *Beecher v. Stratton Corp.*, 170 Vt. 137, 743 A.2d 1093, 1098 (1999)); *cf. Machules v. Dep't of Admin.*, 523 So.2d 1132, 1134 (Fla.1988) (stating the doctrine of equitable tolling, unlike equitable estoppel, does not require deception or misrepresentation by the defendant; rather, it serves to ameliorate the harsh results that sometimes flow from a strict, literalistic application of administrative time limits).

 In our view, the situations described above do not constitute an exclusive list of circumstances that justify the application of equitable tolling. "The equitable power of a court is not bound by cast-iron rules but exists to do fairness

---

6. We note that in the jurisdictions referenced above that discuss tolling a limitations period when a plaintiff is prevented from filing a complaint, filing generally marks the time for commencement of an action. *See, e.g.,* Alaska R. Civ. P. 3(a) (Alaska); Rule 1–003 NMRA (New Mexico); V.R.C.P. 3 (Vermont); *see also* Fed.R.Civ.P. 3 (federal rules).

and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *Hausman v. Hausman*, 199 S.W.3d 38, 42 (Tex.App.2006). Equitable tolling may be applied where it is justified under all the circumstances. We agree, however, that equitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use.

We have previously tolled a statute of limitations based on equitable considerations. In *Hopkins v. Floyd's Wholesale*, 299 S.C. 127, 382 S.E.2d 907 (1989), a workers' compensation case, we tolled the running of the statute of limitations for the time that the employee was induced by the employer to believe the claim would be taken care of without filing a claim (the "reliance period"). In reaching this result, we considered two methods of treating the claim: (1) requiring that the claim be filed a "reasonable time" after the reliance period, or (2) tolling the statute of limitations during the reliance period. *Id.* at 129, 382 S.E.2d at 908–09. We held the better rule was to toll the running of the statute of limitations during the reliance period, as this "rule estopping employers from asserting the statute of limitation[s]" provided greater certainty and gave the employee the greatest benefit of the equitable rule. *Id.* at 130, 382 S.E.2d at 909.

In *Schriber v. Anonymous*, 848 N.E.2d 1061 (Ind.2006), a widow brought medical malpractice and wrongful death claims arising out of the death of her husband. The widow encountered difficulties in effecting timely service because the defendant, a healthcare facility, failed to file a certificate of assumed name for its business designation and to conspicuously post its facility license in public view as required by state law. *Id.* at 1063. The Indiana Supreme Court, while deciding the case on another basis, observed that the proper procedure should have been for the court to judicially toll the expiration of the applicable limitations period for the time that the defendant's actions hindered the plaintiff's discovery of the proper entity name and thus delayed her attempt to effect service. *Id.* at 1063–64.

In the current appeal, we find Ebenezer's failure to properly list its registered agent for service with the Secre-

tary of State as required by state law hindered Hooper's pursuit of service.[7] Although Ebenezer argues it is entitled to the dismissal of Hooper's action because she should have pursued alternative means of service, such as publication or service upon the Secretary of State, nowhere in Ebenezer's arguments does it acknowledge the obvious fact that the need for alternative means of service was caused by Ebenezer's own failure to supply the correct information regarding its agent to the Secretary of State as required by law. In fact, as Hooper noted in her brief, though several years had passed, Ebenezer still had not supplied the name of an appropriate agent for service of process to the Secretary of State at the time this case was initially brought before our Court. Hooper was entitled to rely on the public records and she diligently pursued service on what turned out to be a nonexistent agent. Thus, it is not equitable that Ebenezer be the beneficiary of the drastic consequence of a dismissal.

Moreover, it is important to note that a party utilizes these alternative methods of service only after first exercising reasonable or due diligence to effect service on an individual or agent. *See e.g.,* S.C.Code Ann. §§ 15–9–710 & –730 (2005) (providing that when an individual or corporate agent, respectively, cannot be located in this State after the exercise of due diligence, service may be had by publication once this fact has been established by affidavit to the satisfaction of the court); *id.* § 33–44–111 (2006) (stating if an agent for a limited liability company cannot be found after the exercise of reasonable diligence, service may be had upon the Secretary of State).

In this case, Hooper first tried to effect service upon the agent named by Ebenezer at the address it supplied to the Secretary of State. When that was unsuccessful, Hooper hired a private investigator, who found a personal address for the agent. Hooper contacted the Lexington County Sheriff?s Department on numerous occasions and was told that service was being made. She was not notified until one month after

---

7. Under South Carolina law, corporations and limited liability companies must designate and continuously maintain an agent for service of process. *See* S.C.Code Ann. § 33–5–101 (2006) (corporations); *id.* § 33–44–108 (limited liability companies).

the running of the statute of the limitations that service had been unsuccessful because the whereabouts of the agent could not be determined.

Hooper finally was able to effect service after the statute of limitations had run, only after she exercised reasonable and due diligence to serve Ebenezer's agent. Under Rule 3(a)(2), SCRCP, even if the limitations period has run, service may still be effected if it is accomplished within 120 days of filing of the summons and complaint. Unfortunately, Hooper was approximately one week past the 120 days. Thus, under the unique circumstances of this case, we conclude it is appropriate to equitably toll the statute of limitations for the time Hooper spent in pursuit of Ebenezer's nonexistent agent.

Finally, we note that public policy and the interests of justice weigh heavily in favor of allowing Hooper's claim to proceed. The statute of limitations' purpose of protecting defendants from stale claims must give way to the public's interest in being able to rely on public records required by law.

## CONCLUSION

As a matter of law and public policy, we reverse the trial court's grant of summary judgment in favor of Ebenezer and remand for further proceedings consistent with this opinion.[8]

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER and PLEICONES, JJ., concur.

KITTREDGE, J., concurring in result only.

---

8. Based on our holding, we need not reach Hooper's remaining arguments regarding the 120-day provision of Rule 3(a)(2), SCRCP and equitable estoppel. However, we note that, at oral argument, Hooper's counsel conceded the appropriateness of the ruling of the Court of Appeals regarding the application of Rule 3(a)(2), SCRCP.